IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANDRA L. VANCE,<br>12129 REARVIEW DR.<br>NEWBURG, MD 20664<br><br>    Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY,<br><br>    Defendant. | Civil Action No._____<br><br>Jury Requested |

## COMPLAINT

**COMES NOW** Plaintiff, Andra Vance (hereinafter "Plaintiff" or "Mr. Vance"), by and through his undersigned counsel, and sues Washington Metropolitan Area Transit Authority (hereinafter "WMATA" or "Defendant"), and for cause of action states as follows:

### NATURE OF THE CASE

1. Plaintiff brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*., for relief from racial and color discrimination.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under laws of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

3. Venue is appropriate and is based on the fact that a substantial part of the

1

actions complained of are the result of actions and the employment practices of Defendant, a municipality within the District of Columbia. *Id.*

## EXHAUSTION OF REMEDIES

4. Plaintiff timely contacted the United States Equal Employment Opportunity Commission ("EEOC") and filed a complaint against WMATA alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e, *et. seq.*, identified as EEOC Charge No.570-2019-01840.

5. Plaintiff has exhausted all of his administrative remedies.

6. Plaintiff submitted a Form 5 Charge to the EEOC alleging that WMATA had violated Title VII of the Civil Rights Act of 1964, as amended, due to discrimination based upon his race.

7. On September 13, 2019, Plaintiff received a Dismissal and received a Notice of Suit Rights letter from the U.S. Equal Employment Opportunity Commission stating that Plaintiff had ninety (90) days to file suit, if he so desired.

8. On December 110, 2019, Plaintiff timely files his action within ninety (90) days of receipt of the EEOC's "Notice of Right to Sue."

## PARTIES

9. Plaintiff is currently domiciled at 12129 Rearview Dr., Newburg, Maryland 20664, is a resident of the State of Maryland, and is a United States citizen.

10. Defendant WMATA is an instrumentality created by Congress to operate a mass transit system in the state of Maryland and the surrounding Metropolitan area and is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of its employees or agents and is therefore liable, pursuant to the doctrine of *Respondeat Superior*.

## **FACTUAL BACKGROUND**

11. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

12. Plaintiff was hired by Defendant on October 6, 2003, as a Metro Transit Police Officer, ("MTPD"), and during the time at issue, he was assigned to District II A-Section Patrol, and his Beat Assignment was Anacostia Metro Station in Washington, D.C.

13. During the time at issue, Ronald Pavlik was the Chief of Police.

14. During Plaintiff's tenure in Defendant's employ, Plaintiff's evaluations were 6.5 – 6.75 out of a possible 7, with 7 being the highest that one can achieve on one's evaluation.

15. On or about February 16, 2018, Mr. Vance arrested an offender at the Anacostia Metro station.

16. While conducting the arrest, Mr. Vance had to defend himself from the aggressive perpetrator who was resisting arrest.

17. The perpetrator lunged at and rushed at Mr. Vance while Mr. Vance was placing him under arrest, which is visible from video surveillance.

18. On February 21, 2018, Mr. Vance was placed on a paid administrative leave of absence.

19. On or about September 2018, Chief Pavlik decided to forward Mr. Vance's case to the U.S. Attorney's office for prosecution, but decided to not pursue charges against the perpetrator.

20. On March 1, 2019, Mr. Vance was terminated from WMATA for using excessive force despite similarly situated coworkers not of his race, who were not terminated for the same, similar or worse behavior.

21. To date, Mr. Vance has not been criminally charged for the arrest.

11. In comparison, other WMATA Police Officers of a different race officers with more harsh alleged violations than Mr. Vance, were treated more favorably.

12. In the case of L. H. (white male), there was a video of evidence as well.

13. The video purportedly shows L.H. beating an underage individual with a closed fist in the head and face, using excessive force on a minor.

14. L.H. did not arrest the underage individual after he used excessive force; there was no underlying assault, attack, or illegal activity to warrant an arrest unlike the arrest Mr. Vance was attempting to effectuate.

15. WMATA viewed the footage of L.H. but did not report the conduct to the appropriate jurisdiction, even though reporting such incidents was mandatory.

16. Instead, of reporting L.H.'s incident, WMATA conducted its own internal investigation and allowed L.H. to remain employed and on paid leave for nearly two years pending the outcome of their internal investigation.

17. WMATA treated L.H. more favorable than Mr. Vance when it decided to not report the incident to the appropriate jurisdiction, handled the matter internally, and allowed L.H. to remain employed pending the outcome of their internal investigation.

18. Upon information and belief, to date, L.H. is still employed by WMATA.

19. In the case of Officer W.O. (white male), he used his personal vehicle to mow through a group of people, he struck an individual and his child and decided to keep driving.

20. When stopped by the crowd because of his incomprehensible action, he decided to pull his weapon on the individual and the crowd to the horror of his own co-workers, other officers on the scene that became involved to prevent him from actually shooting his weapon at innocent bystanders.

21. The incident with W.O. was also on video surveillance in front of a metro station.

22. WMATA had the opportunity to view his actions as well and failed to report this clearly illegal matter to the appropriate authority for prosecution.

23. W.O.s actions could have resulted in the death of an individual but WMATA did not think his action serious enough to warrant anything other than an internal investigation.

24. Officer W.O.'s charges were reduced to "Leaving after Colliding Personal Injury" and Deferred Prosecution of the case pending W.O.'s completion of a community service program.

25. Unlike Mr. Vance who was terminated by Chief Pavlik before the conclusion of his case, Officer W.O. was not placed on Leave Without Pay, but was placed on a lengthy leave with pay for more than 9 months and allowed to return to work with Chief Pavlik's approval.

26. In another incident, excessive force on the part of an officer J.C. occurred on June 22, 2019.

27. J.C. (white male) was filmed tazing a citizen more than seven (7) times at a metro station.

28. The video was published all over local news to the outrage of viewers.

29. The video shows J.C. escalating a situation and using excessive force towards a citizen that was trying to verbally defend a group of juveniles that were being arrested.

30. Council members as well as citizens asked, to no avail, for Chief Pavlik to suspend J.C. pending investigation of the excessive force incident.

31. In the case of a J.C. tazing a citizen in the course of his duties seven times, WMATA not only failed to report the incident to the appropriate authority for review against the officer, but WMATA also did not suspend the officer pending their internal investigation.

32. Often times, the incidents involving white officers are handled internally if at all possible.

33. The white officers are consistently placed on paid administrative leave pending the investigation; they are not typically placed on leave without pay.

34. Ultimately, whether the investigation yields a violation or not, the white officers are reprimanded via trainings, reassignment, early retirement, or resignation but not termination.

35. In contrast, Black and Hispanic (darker in color) officers are placed on leave without pay or benefits and terminated.

36. Additionally, during his time employed with WMATA, Mr. Vance was continuously placed at the most aggressive and dangerous stations with no break in assignments, and was not provided with treatment after many traumatic events and physical altercations.

37. In contrast, white officers were not continuously placed at these aggressive stations for long periods of time.

38. At one point, when Mr. Vance asked to be reassigned to stations in different sectors of the city as opposed to the station in the highest crime area of the city, he was told by management, "You'll be alright, you'll be down there with your people.

39. It was known and common for WMATA Management to often referred to the stations as "Animalcostia" and "Congo Heights."

40. By placing Mr. Vance at these aggressive stations, it placed him in a position where he would be more inclined to encounter aggressive situations where force might need to be used.

41. Mr. Vance coworkers who were of a different race and color were not left at a location that was considered a high crime area.

## COUNT ONE
### (Discrimination on the Basis of Race/color in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.)

47. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

48. As an African American, Plaintiff is a member of a protected class.

49. Plaintiff was subjected to an adverse action in the form of his termination from Defendant's employ.

50. As the discipline to which Plaintiff was subjected was demonstrably harsher than that meted out by Defendant to Plaintiff's white co-workers charged with the same or worse misconduct, Plaintiff charges that his termination was the result of his race and color.

51. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment when he was paced on LWOP and Administrative Leave and when he lost his employment with Defendant.

52. Defendant knew that Plaintiff is an African American with dark skin prior to subjecting Plaintiff to the aforementioned material adverse employment actions.

53. As described above, Plaintiff has been treated differently and subjected to different terms and conditions of employment in comparison with his Caucasian co-workers.

54. As stated above, other employees that worked in the same position as Plaintiff, under the same management as Plaintiff, and were charged with the same, similar, or more egregious misconduct as Plaintiff, but were members of a different class than Plaintiff by virtue of being Caucasian as opposed to African-American, have been treated more favorably then Plaintiff in the terms and conditions of employment.

55. These white officers who were Plaintiff's coworkers and worked alongside Plaintiff have not been placed on LWOP on administrative leave or been terminated, for having engaged

in the same, similar, or more egregious misconduct.

56. Plaintiff's race and color were determining factors in Defendant's unlawful conduct toward Plaintiff.

57. Plaintiff's race and color were motivating factors in Defendant's unlawful conduct toward Plaintiff.

58. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

59. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race and color.

60. Defendant discriminated against Plaintiff because of his race and color by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

61. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

62. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

63. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in a fair and just amount;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses with interest incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## Equitable Relief

64. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

65. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, clear and present dangers to the employees of Defendant and could result in

9

further illegal actions on the part of Defendant, by and through its agents, servants, and employees.

## JURY DEMAND

66. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

December 12, 2019                           Respectfully submitted,

                                                    By: */s/ Donna Williams Rucker*
                                                        Donna Williams Rucker
                                                        (DC Bar No. 446713)
                                                        Deputy Managing Partner
                                                        Tully Rinckey, PLLC
                                                        815 Connecticut Ave.,
                                                        N.W., Suite 720
                                                        Washington, DC 20006
                                                        (202) 787-1900
                                                        (202) 640-2059
                                                        drucker@fedattorney.com